FILED
KC
MAY 0 6 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTERN DISTRICT OF ILLINOIS

GLENN B. LAKEN,

§
§

Plaintiff,

§

CIVIL NO.:_____

§
§

**05C 2725**

vs.

§
§

Plaintiff's Address:
Glenn B. Laken
Inmate No. 12999-424
Atlanta USP
601 McDonough Blvd., S.E.
Atlanta, GA. 30315

JUDGE JOHN W DARRAH

§
§

FEDERAL BUREAU OF PRISONS,
a federal agency of the
United States Government,

§
§
§

MAGISTRATE JUDGE SCHENKIER

§

Defendant.

§
§
§

Defendant's Address:
U. S. Federal Bureau of Prisons
320 First Street, N.W.
Washington, D.C. 20534

## PLAINTIFF GLENN B. LAKEN'S ORIGINAL COMPLAINT

COMES NOW, the Plaintiff, GLENN B. LAKEN, in the above entitled

numbered cause who files this, his original COMPLAINT against the Defendant, the

FEDERAL BUREAU OF PRISONS, a federal agency of the United States Government,

stating claims as follows:

### I. JURISDICTION AND VENUE

1.      This action arises under the Privacy Act, codified under Title 5, United

States Code, Section 552a *et seq.*

2.      The jurisdiction of this Court is invoked in accordance with the provisions

of Title 28, United States Code, Section 1331.

3.   The General Venue Statute, 28 U.S.C. § 1391 as well as Title 5, United States Code, Section 552a(g)(5), prescribes venue, which properly lies in the United States District Court for the Northern District of Illinois.

## II. NATURE OF ACTION AND RELIEF SOUGHT

4.    Plaintiff brings suit against Defendant FEDERAL BUREAU OF PRISONS because 1) it maintained inaccurate records regarding Plaintiff and therefore failed to fulfill its record keeping obligations, 2) this failure proximately caused adverse determinations against plaintiff regarding his placement in inappropriate institutions and threatens to further damage plaintiff, 3) Defendant's failure to maintain accurate records was intentional and/or willful and proximately caused an adverse effect on Plaintiff, and 4) Plaintiff has thereby suffered and will continue to suffer actual damages. Specifically, and not exclusively, Defendant designated Plaintiff and caused him to self-surrender at a higher security level federal correctional institution in Coleman, Florida than would have been dictated by accurate information. When Plaintiff was informed by the federal prison officials in Coleman, Florida that the FEDERAL BUREAU OF PRISONS had classified him (inaccurately) as a member or associate of the COLOMBO/BONNANO Families of La Cosa Nostra, two infamous organized crime families, and as having conspired to solicit for the murder of a government informant, Plaintiff immediately protested and claimed that the heretofore described information maintained in the FEDERAL BUREAU OF PRISONS' records and files and data base were completely erroneous, and that any reliance on same by FEDERAL BUREAU OF PRISONS and its officials would be outrageous and egregious.

2

5.   At the request of Plaintiff, and in an effort to remedy the matter of the erroneous information aforementioned, the federal prison officials in Coleman, Florida, contacted the United States Probation Department for the Southern District of New York to ascertain whether the aforementioned information maintained on Plaintiff was correct. The United States Probation Department, via letter, informed the federal prison officials in Coleman, Florida that the aforementioned information maintained by the FEDERAL BUREAU OF PRISONS on Plaintiff was erroneous.

6.   Although the federal prison officials in Coleman, Florida corrected its institutional records and files on Plaintiff, the REGIONAL DIRECTOR, RAYMOND HOLT, for the Southeast Region of the Federal Bureau of Prisons, and REGIONAL DESIGNATOR, KATHY LANE, intentionally and/or willfully failed or refused to make the same deletions and corrections to their files and records and those records and files and database maintained by the FEDERAL BUREAU OF PRISONS in the Southeast Regional Office located in Atlanta, Georgia, and Central Office located in Washington, D.C, as well as Bureau-wide.

7.   As a proximate and direct result of the FEDERAL BUREAU OF PRISONS, its officials, KATHY LANE and RAYMOND HOLT's, failure or refusal to delete the erroneous information described above, Plaintiff was caused to be transferred in chains, via ground transportation to a federal detention center, and then to a federal prison camp located in Atlanta, Georgia. Prior to said transfer, Plaintiff informed KATHY LANE and RAYMOND HOLT of the need for Plaintiff to continue his Jewish religious faith in a manner and environment compatible with such religious practice, as well as rehabilitative programs; needs which the Atlanta facility did not and does not

3

remotely satisfy. Plaintiff requested placement in other federal prison camps that had a Jewish community and the necessary elements to meet his religious practices.

8.    In complete disregard of Plaintiff's rehabilitative programming needs, religious needs, faith and practices, and in an effort to punish Plaintiff for exercising his right to petition his grievances to the government via the federal administrative remedy process within the Federal Bureau of Prisons and other means protected by the First Amendment to the United States Constitution, KATHY LANE and RAYMOND HOLT, acting under their official positions within the Federal Bureau of Prisons, designated and transferred Plaintiff to a federal prison camp known as FPC-Atlanta in Atlanta, Georgia. The Defendant claimed that FPC-Atlanta was the only facility available to Plaintiff given the information, albeit erroneous, maintained on Plaintiff by Bureau of Prisons, which supposedly required Plaintiff's placement into a prison camp that could accommodate the security concerns dictated by such information. Defendant further asserted that Plaintiff was so designated and transferred "because [they] can."

9.    As a direct and proximate result of the acts of federal officials KATHY LANE and RAYMOND HOLT, together with other unknown participants, Plaintiff was transferred to FPC-Atlanta where he is being substantially deprived of the ability to practice his Jewish religious faith in a manner and environment permitted by the Federal Bureau of Prisons in other federal facilities and institutions throughout the Southeast Region as well as other parts of the country. The Defendant FEDERAL BUREAU OF PRISONS, together with KATHY LANE, RAYMOND HOLT, and other unknown persons, conspired with one another to inflict emotional distress and injury and otherwise create sufficient impediments to preclude Plaintiff from being imprisoned in the

appropriate federal prison camp commensurate with his correct custody classification. Such acts of Defendant heretofore described were also designed and intended to prevent Plaintiff from practicing his Jewish faith and beliefs within the prison setting.

10.    The acts of Defendants were in complete derogation of rights secured to Plaintiff by the United States Constitution and the laws of the United States of America.

11.    Plaintiff seeks equitable relief of this Court, as well as compensatory damages in such amounts as the jury may find to be fair and just in consideration of the evidence at trial. Additionally, Plaintiff seeks such injunctive orders as may be required to safeguard him from future acts by the Defendant in derogation of his civil and constitutional rights. In accordance with applicable law, Plaintiff prays that this Court determine and award costs and reasonable expenses of litigation, including a reasonable attorney's fee as an incident of his costs.

### III. THE PARTIES

12.    The Plaintiff, GLENN B. LAKEN, at all times material hereto was a citizen of the United States and the State of Illinois.

13.    Defendant FEDERAL BUREAU OF PRISONS, at all times material hereto, was a federal agency within the Department of Justice, a part of the Executive Branch of the United States Government.

### IV. GENERAL ALLEGATIONS

14.    All conditions precedent to the filing of this action have occurred, have been fulfilled or have been waived as a matter of law.

15.    In 2000, a federal grand jury sitting in the Southern District of New York indicted GLENN B. LAKEN (hereinafter referred to as "Plaintiff") for various violations

of the mail and wire and securities fraud statutes, Title 18, United States Code, Sections 371, 1343, 1346 and 2, and Title 15, United States Code, Sections §§ 78j(b) and 78ff. *See, United States v Laken*, No. 00 CR 632 (WHP) (S.D.N.Y.)(case pending direct appeal before the United States Court of Appeals for the Second Circuit, Docket No. 03-1244).

16.    That criminal case proceeded to a jury trial, during the course of which Plaintiff maintained his innocence. At the conclusion of the presentation of the evidence, the United States District Court, HON. WILLIAM H. PAULEY presiding, specifically instructed the jury that neither Plaintiff nor any of the co-defendants who were being tried with Plaintiff were involved in, had any knowledge of, or were charged with, any kind of violence in the federal case.

17.    The jury convicted Plaintiff, and he was subsequently sentenced to a 63-month term of imprisonment and a period of supervised release, in a combined sentencing proceeding in which Plaintiff was also sentenced upon a guilty plea to securities fraud conspiracy in separate case. During the course of the sentencing hearing, Judge Pauley recommended to the Defendant FEDERAL BUREAU OF PRISONS that Plaintiff be designated to a federal prison camp known as FPC-EGLIN, Eglin, Florida, to serve his federal sentence, and that he participate in the FEDERAL BUREAU OF PRISONS' intensive alcohol treatment program (See Judgment, attached as Exhibit 1). The sentencing hearing was concluded by Judge Pauley directing Plaintiff to self surrender at the prison camp or facility designated by the FEDERAL BUREAU OF PRISONS. A federal presentence report ("PSR") was filed by the United States Probation Officer ROSS KAPITANSKY, which contained a statement as to Plaintiff's offense conduct and role in the charged offense.

6

18.    Thereafter, the Regional Designator for the Northeast Region of the FEDERAL BUREAU OF PRISONS, purportedly read Plaintiff's PSR and entered information gleaned from said report into the records, files, and. database of the FEDERAL BUREAU OF PRISONS, creating therein the record maintained by the Defendant regarding Plaintiff. This unknown Regional Designator entered information on the FEDERAL BUREAU OF PRISONS' SENTRY PROGRAM SYSTEM at "PPG0," that Plaintiff was a member and/or associate of the Columbo and/or Bonnano La Cosa Nostra crime families. This Regional Designator further entered into the database that Plaintiff was charged with or participated in a criminal conspiracy for the solicitation of the murder of a government informant. Based on the above two entries, in addition to other erroneous information about Plaintiff, the FEDERAL BUREAU OF PRISONS classified Plaintiff as a dangerous federal prisoner with ties to organized crime or the MAFIA, precluding Plaintiff's designation to a federal prison camp, and denying him access to certain federal programs. As a direct and proximate result of the aforementioned acts of the aforementioned Regional Designator, the FEDERAL BUREAU OF PRISONS designated Plaintiff to a federal correctional institution known as FCC-Coleman (LOW), a correctional facility with violent federal prisoners and notorious violent gangs such as the LATIN KINGS, MEXICAN MAFIA, and ARIAN BROTHERHOOD to name a few.

19.    On March 9, 2004, pursuant to the FEDERAL BUREAU OF PRISONS notice to Plaintiff to report to FCC-Coleman (LOW), Coleman, Florida, Plaintiff self-surrendered at the barbed wire gates of said correctional institution. There, he was stripped searched, fingerprinted, and the federal prison officials questioned Plaintiff about his alleged affiliation to the Mafia and other organized crime families. Although Plaintiff

denied any such association or affiliation, the federal prison officials at FCC-Coleman (LOW) classified Plaintiff as an associate and/or member of the two crime families, the Columbo and Bonnano Families of La Cosa Nostra. The prison officials further classified Plaintiff as an individual who conspired to solicit the murder of a government informant.

20.    On March 22, 2004, Plaintiff began to exhaust the administrative remedy process available to him pursuant to the Code of Federal Regulations, 28 CFR § 541 *et seq.*, by submitting a "Cop-Out" to the federal prison official, Case Manager MS. TUREAUD, at FCC-Coleman (LOW), dated 3/22/2004, complaining that the Defendant FEDERAL BUREAU OF PRISONS' records, files, and database maintained on Plaintiff were erroneous and needed to be corrected by deleting any and all references about his being (1) an associate or member of the Columbo and Bonnano Families of La Cosa Nostra, or (2) participation in a criminal conspiracy to solicit the murder of a government informant or (3) a violent person.

21.    On March 24, 2004, Plaintiff also submitted a REQUEST FOR INFORMAL RESOLUTION FORM, known as a "BP-8" within the FEDERAL BUREAU OF PRISONS, complaining therein that the aforementioned information maintained by the FEDERAL BUREAU OF PRISONS was erroneous and must be corrected by deletion from said files, records and data base maintained regarding Plaintiff by the FEDERAL BUREAU OF PRISONS.

22.    On March 24, 2004, Case Manager Tureaud responded to Plaintiff's BP-8, stating that the "challenged information in the PSI is brought to the attention of the USPO & a written response is requested. The BUREAU OF PRISONS does not have authority

8

to change information contained in the PSI. A written request to the USPO was mailed

this date." *Id.*

23.    On March 31, 2004, Case Manager Tureaud mailed a letter to CHRIS J.

STANTON, Chief United States Probation Office in New York City, New York stating

the following:

> "The above-referenced individual has challenged the
> accuracy of the information contained in his presentence
> investigation report. Specifics regarding his challenges are
> attached. Pursuant to Bureau of Prisons Program Statement
> 5800.11, Inmate Central File, Privacy Folder, and Parole
> Mini-Files, this information is being submitted for your
> review and final disposition. Accordingly, we request a
> written response addressing your findings."

*BUREAU OF PRISONS' Letter dated 3/31/2004.*

24.    On April 19, 2004, the United States Probation Office, under signature of

U.S. Probation Officer ROSS KAPITANSKY and KATHLEEN COAD, Supervising

U.S. Probation Officer, mailed a letter to Case Manager C. Tureaud, stating, in pertinent

parts:

> "Our response addresses the three specific 'challenges' to
> the presentence report outlined by Mr. Laken in his 'cop-
> out.'

> > 'The Bureau of Prisons has noted in its data
> > base and files that [Laken] [is] an associate
> > of the Colombo/Bonnano LCN, otherwise
> > known as organized crime or mafia,'

> Upon review of the presentence report, we determined that
> there was no information provided which should have been
> interpreted as Mr. Laken being an 'associate' of an
> organized crime family...we have no information to
> indicate that Mr. Laken was an 'associate' of the Bonnano
> or Colombo Crime Family.

> 'The Bureau of Prisons has noted in its data
> base and files that [Laken] was charged with
> Conspiracy to solicit the murder of a
> confidential informant;'

Paragraph 112 contains information about Cary Cimino
soliciting the murder of a cooperating witness. We have no
information that Mr. Laken was involved in this offense
and Mr. Laken's name is not listed in the presentence
report in connection with the conspiracy to solicit the
murder of a confidential informant. In addition, Mr. Laken
was never charged with the conspiracy to solicit the murder
of a confidential informant... We regret if there was any
misinterpretation on behalf of the Federal Bureau of
Prisons.

> 'The Bureau of Prisons has noted in its data
> base and files that the acts or attempted acts
> or references to violence in the charged
> offense were attributable to [Laken] or at the
> very least foreseeable by [Laken] during the
> course of the charged offense.'

The joint venture between the Bonnano and Colombo
Crime family and their subsequent infiltration into the
securities industry encompassed extortion, threats, and
intimidation to further their illegal activities. We have no
information, however, that Glenn Laken was involved in
any acts of extortion, threats, or intimidation. In addition,
we have no information that the defendant was involved in
the obstruction of justice. Nor do we believe that these acts
were foreseeable to the defendant [Laken] during the
course of the charged conspiracy... We have no information
that the defendant [Laken] was involved in any acts of
violence or attempted violence in relation to this offense."

Letter from U.S. Probation Officer Ross Kapitansky to Case Manager C. Tureaud, April

19, 2004 (Exhibit 2).

    25.    Following receipt of the U.S. Probation Office letter described above by

the federal prison officials at FCC-Coleman (LOW), Case Manager Tureaud summoned

Plaintiff to her office within the prison setting. There, Case Manager Tureaud told

Plaintiff that he was designated to the wrong type of federal prison. She opined that Plaintiff should have been designated to either a prison camp located near his residence in Illinois or the prison camp at FPC Eglin, as recommended by Judge Pauley. Case Manager Tureaud informed Plaintiff that she was submitting the appropriate paperwork to cause his immediate transfer to a federal prison camp. She requested a camp close to his residence in Illinois, or in the alternative, FPC-Eglin, Eglin, Florida.

26.    In or about April, 2004, Case Manager Tureaud submitted the necessary forms and paperwork to cause Plaintiff's transfer from FCC-Coleman (LOW), to the aforementioned federal prison camp, for the Warden, B. PEARSON's, approval and signature.

27.    In or about April, 2004, Warden Pearson approved Plaintiff's transfer to a federal prison camp, and forwarded or caused to be forwarded the completed transfer paperwork to the Southeast Regional Designator, KATHY LANE, in order for Plaintiff to be designated to a federal prison camp.

28.    In or about and between May and June 2004, KATHY LANE received the transfer paperwork from the federal prison officials in Coleman, Florida.

29.    In or about and between May and June 2004, Case Manager Tureaud sent numerous e-mails to KATHY LANE regarding the status of Plaintiff's designation and subsequent transfer to FPC-Eglin or a federal prison camp located near Illinois.

30.    In or about and between May and June 2004, KATHY LANE informed the federal prison officials at Coleman, Florida, that she was designating Plaintiff to FPC-ATLANTA, Atlanta, Georgia. When the federal prison officials in Coleman, Florida informed KATHY LANE of the need to place Plaintiff in a federal prison camp which

provides inmates with the necessary elements and conditions for them to fully engage in rehabilitation programs and practice their Jewish religious faith and beliefs, KATHY LANE refused, relying on the erroneous information maintained by Defendant FEDERAL BUREAU OF PRISONS on Plaintiff, as described in the preceding paragraphs of this complaint.

31.     In or about May, 2004, Plaintiff employed the services of JUSTICE POLICY SOLUTIONS, P.C., a consulting firm on matters involving the Federal Bureau of Prisons, and JOEL A. SICKLER, a criminologist, the owner of said firm, to contact KATHY LANE in order to fully apprise her of Plaintiff's rehabilitation and religious needs with regard to his Jewish faith and practice.

32.     In or about May, 2004, Mr. Sickler contacted KATHY LANE and informed her in detail of the need for Plaintiff to be designated to FPC-Eglin or a federal prison camp located near Illinois, all of which had maintained a complete arrangement for inmates of Jewish faith to practice their religion in accordance with the Torah. KATHY LANE, in total disregard to Plaintiff's right to practice his Jewish faith and religious needs, stated she was designating Plaintiff to FPC-Atlanta. KATHY LANE knew or reasonably should have known that FPC-Atlanta did not provide a *minyan* for Friday Sabbath services. KATHY LANE further knew or should have known that the kosher diet offered at FPC-Atlanta was inadequate, deficient and inconsistent with the religious needs of Plaintiff and other Jewish inmates similarly situated.

33.     On or about June 2, 2004, Mr. Sickler, acting on behalf of Plaintiff, contacted RAYMOND HOLT, Regional Director for the Southeast Region of the FEDERAL BUREAU OF PRISONS, via letter (Exhibit 3), informing RAYMOND

12

HOLT that the actions of KATHY LANE with regard to Plaintiff were "arbitrary and capricious." Mr. Holt rejected each of Mr. Sickler's stated concerns in a letter dated June 17, 2004 (Exhibit 4).

34.    During this period of time, Mr. Sickler further informed RAYMOND HOLT of Plaintiff's religious and rehabilitative needs, which were not being offered at FPC-Atlanta. Specifically, Mr. Sickler told RAYMOND HOLT that: (1) the United States District Court for the Southern District of New York, the HON. WILLIAM H. PAULEY, entered an order recommending Plaintiff be designated to FPC-Eglin and directing Plaintiff to participate in the 500-hour RESIDENTIAL DRUG ABUSE PROGRAM; (2) Plaintiff needed to be housed with other observant Jews and be permitted access to Kosher diet, Sabbath services and other faith-based opportunities; and (3) FPC-ATLANTA offered neither the 500-hour Resident Drug Abuse Program nor an environment for a inmate of Jewish faith to practice his religion in accord with the Torah. HOLT, by and through his executive assistant, informed Mr. Sickler that he would investigate the matter and allegations described above.

35.    In or about June 2004, Case Manager Tureaud informed Plaintiff that KATHY LANE designated Plaintiff to FPC-ATLANTA, a satellite prison camp, based on the erroneous information regarding Plaintiff maintained by Defendant FEDERAL BUREAU OF PRISONS and otherwise gleaned from the presentence report issued by the United States Probation Department. Case Manager Tureaud further informed Plaintiff that she had made several attempts, via e-mail, to contact KATHY LANE in order to reconsider her actions against Plaintiff. Case Manager Tureaud told Plaintiff she

13

highlighted the reasons why Plaintiff should not be designated to FPC-ATLANTA, which included but were not limited to Plaintiff's religious and rehabilitation needs.

36.    During this period of time, and following Case Manager Tureaud's attempt to convince KATHY LANE to reconsider her actions regarding Plaintiff, KATHY LANE informed Plaintiff's legal representative, Mr. Sickler, that she was not going to reconsider her decision requiring Plaintiff to serve his federal sentence in FPC-ATLANTA. KATHY LANE informed Mr. Sickler that she designated Plaintiff to FPC-ATLANTA because she "can" and gave no consideration to Plaintiff's religious and rehabilitation needs or to United States District Judge Pauley's recommendation.

37.    In or about June 7, 2004, Plaintiff filed a BP-9 objecting to the denial of his request to be transferred to a camp near his home in Illinois. When this request was denied, Plaintiff filed a BP-10 (supplemented by correspondence between Joel Sickler and Regional Counsel Sunderman dated July 31, 2004), appealing this denial (Exhibit 5, Case No. 337315). When this BP-10 was denied, in a response dated September 28, 2004 (Exhibit 6) Plaintiff filed a BP11 (Exhibit 7). The BP-11 was denied by Harrell Watts, Administrator, National Inmate Appeals, in a response dated December 22, 2004 (Exhibit 8).

38.    Meanwhile, in or about June 2004, Plaintiff was summoned to a prison officer known as "R&D" at FCC-Coleman (LOW), where he was stripped, searched, later handcuffed, placed in leg irons and chains, and transferred, via a prison bus, to a federal detention center in Tallahassee, Florida.

39.    In or about June 2004, Plaintiff was removed from FDC-TALLAHASSE and transported, via bus, to FPC-ATLANTA, where he was later confined to said federal

14

prison facility to further serve his federal sentence. During the course of this transfer, Plaintiff was placed in handcuffs, leg irons and chains.

40.    In or about July 2004, Plaintiff, after making inquiry into the erroneous information and data described in the preceding paragraphs of this complaint to the prisons officials at FPC-ATLANTA, was informed by a prison official that all of the inaccurate and erroneous information regarding Plaintiff maintained by the Defendant FEDERAL BUREAU OF PRISONS had been deleted and obliterated from its records and files and database.

41.    On or about July 2004, following receipt of the above notification from the prison officials in the preceding paragraph, Plaintiff was informed by his family that the Defendant FEDERAL BUREAU OF PRISONS was still maintaining in its files, records and data base that Plaintiff was an associate and/or member of the Colombo and/or Bonnano La Cosa Nostra crime families, and that he had been charged with crimes of violence, *i.e.*, the conspiracy to solicit the murder of a government confidential informant.

42.    In or about July 2004, Plaintiff was summoned to a prison office where his assigned Unit Manager, Unit Counselor, and Case Manager were present. The aforenamed prison officials asserted they were conducting a "Unit Team meeting" which was mandatory every six (6) months while Plaintiff was being confined in the Defendant FEDERAL BUREAU OF PRISONS.

43.    During this period of time, and during the course of the above described meeting in the preceding paragraph of this complaint, Plaintiff informed said prison officials that he was under the belief that the aforementioned erroneous information was

15

never deleted or obliterated from the Defendant FEDERAL BUREAU OF PRISONS'
records, files and database maintained on Plaintiff. Plaintiff informed said prison officials
that the specific erroneous information on Plaintiff was revealed on the Defendant
FEDERAL BUREAU OF PRISONS' database/software commonly referred to as
"SENTRY" (by both the prison population and prison officials) at "PPG0."

     44.    During this period of time, the federal prison officials aforementioned in
paragraph 42 of this complaint, informed Plaintiff, after reviewing the Sentry program at
PPG0, that the Defendant FEDERAL BUREAU OF PRISONS was in fact maintaining in
its records, files and data base that Plaintiff was: (1) an associate and/or member of the
Colombo and/or Bonnano La Cosa Nostra, notorious organized crime families; (2) a
participant or member in the criminal conspiracy to solicit the murder of a government
confidential informant; and (3) convicted of crimes of violence. These prison officials
further informed Plaintiff that, absent a judicial order, Defendant FEDERAL BUREAU
OF PRISONS would not correct said erroneous information by deletion and/or
obliteration.

     45.    During this period of time, the federal prison officials aforementioned in
paragraph 42 of this complaint conceded to Plaintiff that the information described in the
preceding paragraphs of this complaint and maintained by the Defendant FEDERAL
BUREAU OF PRISONS regarding Plaintiff was in fact erroneous, but asserted that they
were powerless or lacked the requisite authority to delete and/or obliterate said erroneous
information from the records, files and database within Defendant FEDERAL BUREAU
OF PRISONS.

46.    On July 13, 2004, Plaintiff presented his Privacy Act claims to Defendant FEDERAL BUREAU OF PRISONS via the administrative remedy process within said federal agency (Exhibit 9, Case No. 343516). In a "Response" dated July 28, 2004, the Warden G. Maldonado, Jr. denied his request to have said erroneous information deleted, corrected and/or obliterated from the agency's records, files and database (Exhibit 10). Plaintiff appealed the denial of the administrative relief (Exhibit 11), but the denial was affirmed in a response dated September 17, 2004 (Exhibit 12). Plaintiff exhausted his final appeal to the General Counsel of Defendant FEDERAL BUREAU OF PRISONS, who also affirmed the decisions of the federal officials

47.    Plaintiff also filed papers seeking a transfer to a facility that would secure his right to observe his faith. This request was denied and subsequent appeals were taken, including the filing of a BP-11 (Exhibit 13, Case No. 343515). The BP-11 was denied January 5, 2005 (Exhibit 14).

48.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS employed erroneous information to determine that Plaintiff was a violent person, an individual who was a member or an associate of the Colombo and/or Bonnano La Cosa Nostra organized crime families, and had conspired to solicit the murder of a government confidential informant. Based on the heretofore-mentioned determinations made by Defendant FEDERAL BUREAU OF PRISONS, adverse decisions were made against Plaintiff by said federal agency, including but not limited to designation to higher-than-appropriate security level facilities within the prison system, a significant increase in Plaintiff's custody classification within the prison system, and dissemination of misinformation to federal prison officials, correctional guards, private contractors

working within the prison setting, the prison inmate population and/or the public community.

49.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS failed to maintain Plaintiff's records with the degree of accuracy necessary to assure fairness in the Defendant FEDERAL BUREAU OF PRISONS' determinations described in the preceding paragraphs of this complaint, to the detriment of Plaintiff.

50.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS' failure to maintain Plaintiff's records with the degree of accuracy necessary to assure fairness in the determination process affecting Plaintiff was the proximate cause of the adverse determinations by Defendant FEDERAL BUREAU OF PRISONS against Plaintiff, and Defendant FEDERAL BUREAU OF PRISONS acted intentionally or willfully in its failure to expunge the inaccurate information identified above, all in violation of the Privacy Act, Title 5, United States Code, Sections 552a(d), (e)(5), (g)(l)(c), (g)(l) (d) and (g)(4) as well as other provisions under the Privacy Act.

51.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS acted without grounds for believing its actions to be lawful and/or flagrantly disregarding Plaintiff's rights under the Privacy Act.

52.    During the relevant period of time, and as a direct result of the actions of Defendant FEDERAL BUREAU OF PRISONS, Plaintiff suffered emotional anguish, embarrassment, and damage to his reputation, sleeplessness, and emotional and physical distress, all of which continues to this day and are likely to continue in the future.

53.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS' actions as described in the preceding paragraphs of this complaint were so

patently egregious and unlawful that anyone undertaking the conduct should have known those actions to be unlawful. Further, the conduct of Defendant FEDERAL BUREAU OF PRISONS goes beyond all bounds of decency, was atrocious and utterly intolerable in a civilized society.

54.    As a direct and proximate result of Defendant FEDERAL BUREAU OF PRISONS' acts, Plaintiff was damaged in an amount in excess of the Court's jurisdictional amount, which he is entitled to recover as a matter of law and equity.

## COUNT I - PRIVACY ACT VIOLATION

### (Title 5 U.S.C. §552a(e)(5) & (g)(1)(D))

55. Plaintiff realleges and reincorporates Paragraphs 1 through 54, above, as if fully set forth herein.

56. Section 552a(e)(5) of the Privacy Act directs the Defendant FEDERAL BUREAU OF PRISONS, *inter alia*, to:

> maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]

57.    Section 552a(d)(2)(B)(i) of the Privacy Act details the rights of Plaintiff to request the Defendant FEDERAL BUREAU OF PRISONS to make, correction of "any portion [of a record] which the [Plaintiff] believes is not accurate, relevant, timely, or complete." *Id.*

58.    During the relevant period of this action, Plaintiff on numerous occasions, after being informed that Defendant FEDERAL BUREAU OF PRISONS used erroneous information which it wrongly used to make adverse determinations against Plaintiff,

requested that the Defendant FEDERAL BUREAU OF PRISONS correct, delete or obliterate the erroneous information on Plaintiff, *i.e.*, his affiliation, association or membership with the Colombo and/or Bonnano La Cosa Nostra crime families; his association with or participation in a criminal conspiracy to solicit the murder of a government confidential informant; and any reference to violence supposedly attributable to Plaintiff.

59.    During the relevant period of time, a federal prison official, Case Manager C. TUREAUD, contacted the agency's claimed source of the above-described erroneous information being maintained on Plaintiff, that being the United States Probation Office for the Southern District of New York. The officials from said United States Probation Office, via letter, informed Case Manager Tureaud that the information maintained on Plaintiff in the records, files, and database of Defendant FEDERAL BUREAU OF PRISONS was clearly erroneous. Case Manager Tureaud then took the necessary steps and actions within Defendant FEDERAL BUREAU OF PRISONS to have the above-described erroneous information on Plaintiff corrected, deleted and/or obliterated. Further, Case Manager Tureaud informed her federal superiors, including but not limited to, UNIT MANAGER FRANK BLOODWORTH, CASE MANAGER COORDINATOR WIGGS, ASSOCIATE WARDEN A. LONGLEY, and WARDEN BRUCE PEARSON, that an adverse determination on Plaintiff had been made by Defendant FEDERAL BUREAU OF PRISONS as a direct result of reliance on erroneous information being maintained on Plaintiff in the files, records and database of Defendant FEDERAL BUREAU OF PRISONS.

60.    During the relevant period of this action, Case Manager Tureaud, together with the other prison officials and executives at FCC-Coleman (LOW), completed and submitted the necessary internal paperwork to undo and otherwise correct the adverse determination against Plaintiff as described in the preceding paragraphs of this complaint.

61.    During the relevant period of this action, and notwithstanding the actions of the local prison officials aforenamed in the preceding paragraph 59 of this complaint, Defendant FEDERAL BUREAU OF PRISONS, acting willfully and intentionally, refused or failed to delete or obliterate the erroneous information from its records, files, and database located throughout its prison system, all to the detriment of Plaintiff.

62.    During the relevant period of this action, and continuing to this very day, Defendant FEDERAL BUREAU OF PRISONS maintains in its files, records, and database on Plaintiff the erroneous information described above, which has had and continues to have an adverse effect on Plaintiff, as that term is defined under section 552a(g)(1)(D) of the Privacy Act.

63.    As a direct and proximate act of Defendant FEDERAL BUREAU OF PRISONS, Plaintiff suffered damages, including but not limited to disclosure of the erroneous information to other federal agencies, prison officials and inmate population, severe emotional and physical distress, sleeplessness, pain and discomfort, physiological harm, loss of time, mental suffering and humiliation, disgrace, and injury to his reputation. The emotional and physical aspects, except physical injury, are continuing to this day and are likely to continue into the future.

64.    As a direct and proximate result of Defendant FEDERAL BUREAU OF PRISONS' acts, Plaintiff suffered damages in excess of $300,000.00, which he is entitled

to recover from Defendant FEDERAL BUREAU OF PRISONS as a matter of law and equity under the Privacy Act.

65.    As a direct and proximate result of Defendant FEDERAL BUREAU OF PRISONS' acts, Plaintiff is entitled to recover additional compensatory damages, and other damages including attorney's fees and costs associated with this action, from said Defendant agency.

## COUNT II- PRIVACY ACT VIOLATION

### (Title 5 U.S.C. §552a(g)(l)(C))

66.    Plaintiff realleges and reincorporates Paragraphs 1 through 65, above, as if fully set forth herein.

67.    Section 552a(e)(5) of the Privacy Act directs the Defendant FEDERAL BUREAU OF PRISONS, *inter alia*, to:

> maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination[.]

68.    Section 552a(d)(2)(B)(i) of the Privacy Act details the rights of Plaintiff to request the Defendant FEDERAL BUREAU OF PRISONS to make correction of "any portion [of a record] which the [Plaintiff] believes is not accurate, relevant, timely, or complete." *Id.*

69.    In or about 2004, the Defendant FEDERAL BUREAU OF PRISONS, by and through its Regional Designator for the Northeast Region of the Bureau of Prisons, intentionally, willfully, recklessly and with wanton disregard of Plaintiff's rights under the Privacy Act, created and entered the following erroneous information regarding

Plaintiff into the records, files and database of Defendant FEDERAL BUREAU OF PRISONS:

       i. Plaintiff is an associate and/or member of the Colombo and/or Bonnano La Cosa Nostra crime families;

       ii. Plaintiff was associated with and/or participant in a criminal conspiracy to solicit the murder of a government confidential informant;

       iii. Plaintiff is an individual who committed and was convicted of crimes of violence;

       iv. Plaintiff is an inmate who is not suitable for prison camp programming or confinement, but rather must be confined within a federal correctional institution, a low security level facility.

70.    After his federal sentence was imposed by the United States District Court for the Southern District of New York, which recommended that Plaintiff be designated to Eglin Camp and  participate in the Bureau of Prisons' intensive alcohol treatment program, Plaintiff was given notice by Defendant FEDERAL BUREAU OF PRISONS to self-surrender at FCC-Coleman (LOW), Coleman, Florida to commence serving that sentence.

71.    Thereafter, Plaintiff's attorney contacted the Regional Director inquiring why such an adverse determination was made against Plaintiff despite the United States District Court's recommendation that Plaintiff be designated to Eglin Camp and participate in the Bureau of Prisons' intensive alcohol treatment program. The Regional Designator informed counsel that the (mis)information, described in paragraph 69 of this complaint, maintained by the Defendant FEDERAL BUREAU OF PRISONS on

23

Plaintiff, prevented Plaintiff from being eligible for enrollment in the prison camp and programming, including community correctional programming. Counsel informed the Regional Designator that the above-described information was clearly erroneous and had to be corrected. The Regional Designator responded that he could not change the information maintained on Plaintiff as described above.

72.    Thereafter Plaintiff, after being informed by his attorney of the adverse determination made by the Defendant FEDERAL BUREAU OF PRISONS, based upon the erroneous information described in the preceding paragraphs of this complaint, became severely emotionally distressed, and physically ill, and unable to function. Plaintiff was unable to sleep, suffered abdominal pains and discomfort.

73.    On or about and between May and June, 2004, Plaintiff employed the consulting services of JUSTICE POLICY SOLUTIONS and JOEL A. SICKLER, a criminologist, for the purposes of assisting Plaintiff in obtaining a reversal of Defendant FEDERAL BUREAU OF PRISONS' adverse determination of Plaintiff which was based on the erroneous information regarding Plaintiff, described in the preceding paragraphs of this complaint, maintained by Defendant FEDERAL BUREAU OF PRISONS.

74.    In or about between May and June, 2004, Mr. Sickler, on behalf of Plaintiff, communicated to KATHY LANE and RAYMOND HOLT that the information the Defendant FEDERAL BUREAU OF PRISONS maintained on Plaintiff was erroneous, citing the letter memorandum from the United States Probation Office and its officials for the Southern District of New York, the very federal officials who investigated, prepared and otherwise authored the presentence report submitted to the Defendant FEDERAL BUREAU OF PRISONS. (*See* Exhibit 15)

75.    In or about between May and June 2004, KATHY LANE and RAYMOND HOLT failed or refused to delete the erroneous information located in the agency's database, records and/or files. They insisted that the adverse decision against Plaintiff based on the above-described erroneous information was proper and not subject to change or otherwise could not be removed.

76.    During the relevant period of this action, the Defendant FEDERAL BUREAU OF PRISONS acted in a manner that was intentional and willful, to the detriment of Plaintiff.

77.    During the relevant period of time, Defendant FEDERAL BUREAU OF PRISONS flagrantly disregarded Plaintiff's Privacy Act rights when it committed each of the aforementioned acts, by and through its federal officials and employees, described in the preceding paragraphs of this complaint.

78.    During the relevant period of this action, and continuing to this very day, the Defendant FEDERAL BUREAU OF PRISONS maintains in its files, records, and database on Plaintiff the erroneous information described in the preceding paragraphs of this complaint, which has had not only a continuing adverse effect on Plaintiff but which has also caused an adverse determination against him by Defendant FEDERAL BUREAU OF PRISONS, and a clear violation of the Privacy Act, for which Plaintiff can recover, among other things, money damages pursuant to Title 5 U.S.C. § 552a(g)(1)(C).

79.    As a direct and proximate result of the actions of Defendant FEDERAL BUREAU OF PRISONS, Plaintiff suffered damages, including but not limited to preclusion from certain federal prison programming and benefits, erroneous assignment of a higher security classification and adverse treatment flowing from such assignment,

disclosure of the erroneous information described in the preceding paragraphs of this complaint to certain federal agencies, federal employees and prison officials, prison population and other inmates, severe emotional and physical distress, sleeplessness, pain and discomfort, mental suffering and humiliation, disgrace, and injury to reputation, the emotional and physical aspects of which, except physical injury, continue to this day and are likely to continue into the future.

80.   As a direct and proximate result of Defendant FEDERAL BUREAU OF PRISONS' acts, Plaintiff suffered damages in excess of $300,000.00, which he is entitled to recover from Defendant FEDERAL BUREAU OF PRISONS as a matter of law and equity under the Privacy Act.

81.   As a direct and proximate result of Defendant FEDERAL BUREAU OF PRISONS' acts, Plaintiff is entitled to recover additional compensatory damages, and other damages and costs incident to this action, including but not limited to attorney's fees and expenses associated with this action, from said Defendant agency.

## PRAYER

ACCORDINGLY, Plaintiff prays that Defendant be required to answer to this original complaint, that this action be set for trial at an early date and that upon the pleadings, evidence presented, and the facts determined by the jury, the Court grant judgment to Plaintiff including the following relief:

a.   Injunctive orders, both mandatory and prohibitory, (1) requiring the Defendant to cease and desist maintaining, using, and disseminating the erroneous information described in the preceding paragraphs of this complaint; (2) restraining Defendant from enforcing and implementing the adverse determinations made by

Defendant against Plaintiff which were based on, in whole or in part, the erroneous information described in the preceding paragraphs of this complaint and otherwise maintained by said federal agency on Plaintiff; and (3) further restraining and enjoining Defendant and its employees and agents from acting in concert with any others in a manner that directly or indirectly violates or may tend to violate the civil rights of Plaintiff as well as those rights secured to him under the Privacy Act.

     b.    An award of compensatory damages in accordance with the findings of the jury, together with prejudgment and post-judgment interest as allowed by the law, recoverable from the Defendant.

     c.    An award of punitive damages in the full amount found by the jury against the Defendant.

     d.    Plaintiff's costs of action, including reasonable attorney's fees and all reasonable and necessary expenses of litigation, as provided by law, together with post-judgment interest.

     e.    All other and further relief to which Plaintiff may show himself entitled to at law and equity.

Respectfully submitted,

**STEVEN B. MUSLIN, LTD.**

*Attorney for Plaintiff Glenn B. Laken*

Steven B. Muslin
Gregory B. Simon
STEVEN B. MUSLIN, LTD.
19 South LaSalle Street, Suite 700
Chicago, Illinois 60603
(312) 263-7249
Attorney No. 23728

27

Law Offices of Richard Ware Levitt
148 East 78th Street
New York, New York 10021
(212) 737-0400

By:     *Richard Ware Levitt*
      RICHARD WARE LEVITT
      *Attorney for Plaintiff Glenn B. Laken*

## REQUEST FOR JURY

In the exercise of his rights under the Seventh Amendment to the United States

Constitution, the applicable statutes and rules of the Court, Plaintiff respectfully requests

that all issues of fact in his claims for relief be decided by a jury.

Dated: New York, New York
      May 6, 2005

                Respectfully submitted,

                **STEVEN B. MUSLIN, LTD.**

                *Attorney for Plaintiff Glenn B. Laken*

Steven B. Muslin
Gregory B. Simon
STEVEN B. MUSLIN, LTD.
19 South LaSalle Street, Suite 700
Chicago, Illinois 60603
(312) 263-7249
Attorney No. 23728

                Law Offices of Richard Ware Levitt
                148 East 78th Street
                New York, New York  10021
                (212) 737-0400

By:             RICHARD WARE LEVITT
                *Attorney for Plaintiff Glenn B. Laken*